IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action Number 3:07CR345 |
| | ) | |
| JOSE MANUEL IBARRA-REYES, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

This matter is before the Court on defendant Ibarra-Reyes' motion to dismiss the indictment on the ground that it violates the applicable five- year statute of limitations period set forth in 18 U.S.C. § 3282(a). The government has responded, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decision-making process.

I. FACTS

Ibarra-Reyes, a Mexican citizen, first illegally entered the United States without inspection near Eagle Pass, Texas on an unknown date in 1991. On April 10, 1997, Ibarra-Reyes was convicted in Dallas County, Texas, of Theft-Enhanced, which is an aggravated felony under the Immigration and Nationality Act, and sentenced to two (2) years incarceration.

The Immigration and Naturalization Service ("INS") then placed an immigration detainer with the Dallas County, Texas Sheriff's Office. On April 11, 1997, INS agents interviewed the defendant and advised him of removal procedures. On May 14, 1997, Ibarra-Reyes was ordered removed, and on that day was removed from the United States by the INS. INS officials advised

the defendant, via form I-294, of the penalty for returning to the United States without the advance permission of the Attorney General.

Following his return to Mexico, Ibarra-Reyes again illegally entered the United States on an unknown date at an unknown location along the United States-Mexico international border, without advance permission of the Attorney General of the United States or the Secretary of Homeland Security.  However, the defendant was using one of ten different aliases, two different false social security numbers, and six different dates of birth from this point forward.

On August 10, 2001, INS-North Carolina received criminal history information regarding an individual named Jose Armado Quintero.  The INS then began a records investigation of Quintero, although based on seriously conflicting identifier information.  On August 17, 2001, INS-North Carolina ran a criminal history inquiry through the National Crime Information Center ("NCIC") on the Federal Bureau of Investigation ("FBI") number associated with the alias Quintero.  That inquiry turned up record references in the FBI system, as well as in the Texas, Virginia, Florida and North Carolina systems.

The response only further clouded the facts because the defendant had been using multiple false aliases and identifiers.  The FBI records, which contained the arrest in Texas on April 11, 1997, and an arrest in Blountville, Tennessee on April 27, 2000, were under the name "Jose Armando Quintero Acosta," whereas the INS arrest in the record was under the name "Jose Manual Ibarra-Reyes."  The Tennessee arrest was under the name "Jose Armando Quintero."  The Florida record was under the name "Jose Armando Quintero Acosta."  The Virginia record was under the name "Jose Armando Quintero."  The North Carolina record was under the name "Jose Armado Quintero."

Notably, there is no mention that North Carolina local law enforcement notified INS in this FBI response, although Ibarra-Reyes relies on this alleged notification to trigger his claim that the statute of limitations period had begun to run. A September 10, 2007 NCIC report shows an entry regarding the North Carolina conviction which now reads; "Immigration Notified: Y," but the North Carolina NCIC entries in 2001 and 2003 did not have this remark. The notification remark only appears in NCIC reports reformatted after 2003. The record does not indicate how, or on what date INS was notified.

On August 30-31, 2001, INS-North Carolina personnel requested copies of the conviction records from the Clerk of Court, DeSoto County, Florida (related to 1998 Retail Theft convictions), and the Clerk of Court, Alleghany Court, NC (related to a 2001 conviction for Possess Sch II CS). On September 6, 2001, the Clerk of Court, Alleghany County, NC, forwarded to INS certified copies of the judgment and conviction ("J&C"). On September 20, 2001, the Clerk of Court, DeSoto County, FL, forwarded to INS certified copies of their J&C. The records confirmed the aliases used, but did not facilitate the identification of Ibarra-Reyes. Thus, the record was still not clear as to who had been convicted in those state courts. The defendant had been released from those states' facilities, so there was nothing left to do in the investigation until the defendant appeared in the system again.

On October 2, 2003, the Virginia Department of Corrections ("VDOC") notified[1] U.S.

---

[1] The Department of Corrections ("DOC") notification continued to mis-identify the defendant by Ibarra-Reyes' preferred aliases. The October 2, 2003, official notification from VDOC to U.S. Immigration and Customs Enforcement ("ICE")-Harrisonburg, Virginia, identified a foreign-born inmate in their custody with the following descriptors:
Name: QUINTERO, Jose
Alias: ACOSTA, Jose REYES, Jose
VSP#318100   Location: New River Regional Jail

Immigration and Customs Enforcement[2] ("ICE") that an individual named Jose Quintero was in DOC custody at the New River Valley Prison, in Dublin, Virginia, as a result of his Wythe County, Virginia, convictions and a seven-year sentence for Manufacturing, Sale, Possession Controlled Substance, and also for being a Fugitive from Justice. An ICE investigation later established that this individual was Ibarra-Reyes under one of his aliases. ICE-Harrisonburg, Virginia commenced an investigation of the unknown subject on October 2, 2003, based on the incorrect name/identifiers in the DOC notification,. On October 3, 2003, a check of ICE databases located the subject's prior immigration arrest and removal.

On December 18, 2003, ICE-Harrisonburg, Virginia ran a criminal history check based on the following information: "Quintero, Jose. Male. White. DOB 10/18/1971." This check returned FBI Record 917174HB4. On December 19, 2003, ICE-Harrisonburg, Virginia, queried FBI Record 917174HB4, which located the Texas[3], Florida, North Carolina, and Virginia convictions noted above.

In verifying the information obtained, on February 19, 2004, ICE-Harrisonburg, Virginia, requested the J&C from the Clerk of Circuit Court, Wythe County, Virginia, related to the January 15, 2003 drug conviction. ICE-Harrisonburg subsequently received the J&C, and, on

---

     DOB: xx/xx/1972    POB: Mexico
     FBI#:917174HB4    SSN: xxx-xx-7865 [*identifier information in record removed per local rule*]
     The records now show that throughout the time Ibarra-Reyes evaded apprehension as an illegal alien, the defendant used a confirmed 7 separate aliases. A 2007 run of the FBI record now contains 10 aliases, 2 social security numbers, and 6 different dates of birth.

    [2] On March 1, 2003, INS service and benefit functions were transferred to the newly created U.S. Citizenship and Immigration Services, while INS law enforcement functions were transferred to the newly created ICE.

    [3] The Texas record was incomplete.

February 26, 2004, queried the DOC Inmate Status Information System to determine the subject's (alias Quintero) incarceration location.

On September 18, 2007, within five years of the VDOC notification, the grand jury returned a one count indictment charging the defendant with being found in the United States after the defendant's illegal reentry after previously being deported subsequent to a conviction for an aggravated felony, in violation of 18 U.S.C. § 1326(a, b(2)). Ibarra-Reyes was arraigned on October 2, 2007. He entered a not guilty plea, and the Court scheduled a jury trial. On November 15, 2007, the defendant filed a motion to dismiss the Indictment on limitations grounds.

## II. ANALYSIS

A deported alien can violate 8 U.S.C. §1326[4] in three different ways: (1) entry, (2) attempted entry, or (3) being "found" at any time in the United States. United States v. Hoenes-De La Cruz, 114 Fed. Appx. 524, 526, 2004 WL 2086025 *1 (4th Cir. 2004). The five year general statute of limitations in 18 U.S.C. § 3282 applies to this violation since the limitation applies to any non-capital offense. See 18 U.S.C. § 3282.

The Court finds that ICE agents did not find the defendant until, at the earliest, ICE received the inaccurate notification from the VDOC on October 2, 2003. ICE did not verify that the individual in the notification was Ibarra-Reyes until February 2004, which is when the

---

[4] 8 U.S.C. § 1326 provides that:
    (a) ... any alien who—.
        (1) has been ... deported, or removed ... and thereafter
        (2) enters, ... or is at any time found in, the United States, ... be
fined under Title 18, or imprisoned ...
Enhanced penalties are provided in subsection (b) depending on the defendant's criminal record.

limitations period began to run in this case. On September 18, 2007, the grand jury returned an indictment charging the defendant with being found in this country after prior removal. The Court finds that the indictment was clearly within the five-year limitations period.

The Court finds that the alleged North Carolina local law enforcement notification of INS did not trigger the running of the limitations period. First, this notification entry was not present at the time of the North Carolina arrest. Defendant relies on a copy of the NCIC inquiry report that was run September 10, 2007. (Def.'s Ex. B.) However, the North Carolina NCIC entries in 2001 and 2003 did not have this remark. (See U.S. Exs. A and B.) Rather, the notification remark only appears in a NCIC report reformatted after 2003.

Second, the statute of limitations is an affirmative defense in which the defendant bears the burden. United States v. Husband, 119 Fed. Appx. 475, 480 (4th Cir. 2005); United States v. Matzkin, 14 F.3d 1014, 1017-18 (4th Cir.1994); United States v. Williams, 684 F.2d 296, 299 (4th Cir.1982). Defendant's ambiguous notification reference does not meet the defendant's burden because the reference does not indicate how, or on what date, Immigration authorities were notified. The reference also does not indicate under what name, date of birth, alleged social security number, or other identifiers the supposed notice was given.

Third, the alleged notification does not meet the definition of "found." As used in 18 U.S.C. § 1326, a defendant is "found" when the ICE agent actually interviews and confirms the defendant is an illegal reentry. Apprehension of an alien by local law enforcement does not constitute being "found" under 8 U.S.C. § 1326. See United States v. Guzman-Bruno, 27 F.3d 420, 422-23 (9th Cir. 1994); see also United States v. Jimenez-Borja, 378 F.3d 853, 857-58 (9th Cir. 2004). Here, the notice allegedly given by a North Carolina local law enforcement agency

to the INS is not the equivalent of being "found" under 8 U.S.C. § 1326.

Additionally, the Court finds that the indictment is within the five-year statute of limitations period because a violation of 8 U.S.C. § 1326 is a continuing offense. The purpose of a statute of limitations is to limit exposure to criminal prosecution following an illegal act. United States v. Smith, 373 F.3d 561 (4th Cir. 2004); Toussie v. United States, 397 U.S. 112, 114 (1970). A statute of limitations protects individuals from having to defend against charges "when the basic facts may have become obscured by the passage of time," and minimizes "the danger of official punishment because of acts in the far-distant past." Toussie, 397 U.S. at 114-15. In the instant case, the bare facts for conviction are a prior illegal entry, removal, or deportation, followed by apprehension by ICE agents in the United States. Nothing concerning these facts has been obscured by the passage of time in this case.

Moreover, the defendant incorrectly extends the statute of limitations to this violation, even though statutes of limitations should not be extended "'except as otherwise expressly provided by law.'" Toussie, 397 U.S. at 115 (quoting 18 U.S.C. § 3282). Normally, the statute of limitations will begin to run when a single criminal act is complete. Smith, 373 F.3d at 563-64. A criminal act committed over an extended period, however, may be treated as a "continuing offense" for limitations purposes when a criminal statute explicitly compels that result, or if "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." Smith, 373 F.3d at 563-64.

Where a deported alien enters the United States and remains here with the knowledge that his entry is illegal, his remaining here until he is "found" is a continuing offense because it is "an unlawful act set on foot by a single impulse and operated by an unintermittent force."

United States v. Midstate Horticultural Co., 306 U.S. 161, 166 (1939). The Fourth Circuit followed this analysis in United States v. Hoenes-De La Cruz, 114 Fed. Appx. 524, 526, 2004 WL 2086025 *1 (4th Cir. 2004):

> An alien may violate 8 U.S.C. § 1326(a) by unlawfully (1) entering, (2) attempting to enter, or (3) being "found" in the United States. United States v. Mercedes, 287 F.3d 47, 54 (2d Cir.), cert. denied, 537 U.S. 900, 123 S.Ct. 202, 154 L.Ed.2d 171 (2002); see also United States v. Mendez-Cruz, 329 F.3d 885, 889 (D.C.Cir. 2003) (§ 1326(a) creates three distinct offenses) (citing United States v. Pacheco-Medina, 212 F.3d 1162, 1165 (9th Cir. 2000)). The statute of limitations begins to run when the offense is complete. Mercedes, 287 F.3d at 54. Although the offense of illegal reentry may be complete when it occurs, when the entry is surreptitious, the "found in" offense "'is first committed at the time of the reentry and continues to the time when the defendant is arrested for the offense.'" United States v. Ruiz-Gea, 340 F.3d 1181, 1189 (10th Cir. 2003) (quoting United States v. Lopez-Flores, 275 F.3d 661, 663 (7th Cir. 2001)).

See also Lopez-Vera v. United States, 2006 WL 1285630 (M.D.N.C. 2006) (offense of illegally re-entering the country is a continuing offense lasting from the time a defendant re-enters until he is arrested for the offense).

As 8 U.S.C. § 1326 is a continuing offense for statute of limitations purposes, the time does not begin to run until the alien is "found" by ICE agents. Therefore, in this case, the grand jury returned the indictment within the applicable five year period.

### III. CONCLUSION

For the foregoing reasons, the Court will deny defendant's motion to dismiss the indictment.

An appropriate order shall issue.

| | |
|---|---|
| December 5, 2007 | _____/s/_____ |
| DATE | RICHARD L. WILLIAMS |
| | SENIOR UNITED STATES DISTRICT JUDGE |